IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

RUFUS W. JOHNSON,
ADC #650597                                                                                           PLAINTIFF

5:07CV00098JLH/HDY

GERALD ROBINSON, et al.                                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.
2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at

1

the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite 402
>Little Rock, AR 72201-3325

## **DISPOSITION**

An evidentiary hearing was held in this case before the Court on April 22, 2008. Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following findings and recommendation.

### **I. Introduction**

Plaintiff, a state inmate incarcerated at the Quachita River Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by defendants while he was incarcerated at the W.C. "Dub" Brassell Detention Center (Jail) from March 31, 2007 until his transfer to the ADC on June 12, 2007. Plaintiff asks for damages from Jefferson County Sheriff Gerald Robinson, Chief of Security Edward Adams, and Jail Administrator Michael Hurst.

### **II. Factual Findings**

Plaintiff is an inmate who had his left leg amputated below the knee as a result of a gunshot wound. He was transferred to the Jail on March 31, 2007, from the Jefferson County Jail Facility as a pre-trial detainee, where he had been housed in a handicapped cell and had access to a wheelchair. Upon arriving at the Jail, plaintiff wore a prosthesis on his leg and was placed in an eight-man cell. The Jail, which was a new facility in March, 2007, was not completely finished and did not have a separate handicapped cell area at that time. Plaintiff stated shortly after arriving at the Jail, his leg swelled up and he was unable to wear his prosthesis, requiring him to hop on one leg back and forth

to the shower and to get his meals. Plaintiff stated although he requested a wheelchair through several grievances and by speaking with defendant Hurst about the issue in May, 2007, he did not receive a wheelchair until about two weeks later (about May 24, 2007). Plaintiff does not remember the exact dates he requested the wheelchair, because he was not given copies of the grievances which he submitted. Plaintiff also complained that any time he and his fellow inmates were out of their cell they were forced to wear handcuffs, including at mealtimes, making it very difficult to eat and drink.

Lawrence Coleman was in the cell with plaintiff from March 31, 2007 until his transfer to the ADC on May 2, 2007. He testified plaintiff's leg swelled and required him to hop to the shower where there was no chair or handicapped rail. Coleman stated this lasted about a month, and that plaintiff tried to talk with someone about getting a wheelchair almost every day. On cross-examination, however, Coleman stated he never saw plaintiff wear his prosthesis, and saw him receive a wheelchair about mid-April.

Defendant Mike Hurst, the Chief Deputy at the Jail, started work at the Jail in March, 2007, and met plaintiff on the day he arrived at the Jail. He asked plaintiff about any medical issues or concerns he was dealing with, and plaintiff told him he had only one leg. Hurst stated this surprised him, because prior to the meeting plaintiff stood in a long line waiting to be booked into the facility, and was wearing his prosthesis. Hurst stated that several days later, plaintiff requested lotion or ointment for irritation of his nub, caused by the rubbing of the prosthesis. Hurst also stated he would see plaintiff every ten-twelve days, and guessed that plaintiff requested a wheelchair about the third week of April, 2007. Although Hurst was unsure about the exact date, he stated he immediately obtained a chair for plaintiff on the day that Plaintiff asked for one. Hurst also testified that although the Jail was built in compliance with the Americans with Disabilities Act (ADA), at the time plaintiff entered the facility the handicapped area was not complete, and when he became aware of plaintiff's handicap, he asked plaintiff if he thought he could "make it" at the Jail. Hurst testified plaintiff stated he could, that he was able to stand in line for his meals. The two did not address the ability to take showers, however.

Captain Edward Adams has been the Chief of Security at the Jail since it opened. He recalled plaintiff asking him about how to get a newspaper in the Jail and how to receive calls from his attorney. Plaintiff never addressed concerns to him about his leg or about his request for a wheelchair. Adams was involved in making sure plaintiff's sheath (a sock-like cloth for his nub) was washed three times per week, and did recall seeing plaintiff in a wheelchair at some point in time. When plaintiff was not in the wheelchair, Adams stated he did not see plaintiff hopping on one leg and did not receive any complaint from him about having to hop to the shower.

The Jefferson County Sheriff, Gerald Robinson, testified his office is located in the County Courthouse, which is not near the Jail, and he never interacted with plaintiff or knew plaintiff prior to this lawsuit being filed. He remembered that inmates were handcuffed while eating for a short period of time after the Jail first opened, as a security measure, because contractors were in and out of the facility finishing the construction. He stated he observed inmates during mealtime and did not witness any having problems eating.

Nurse Carla Royal has been employed at the Jail for a little over a year. She remembered dispensing medications to the plaintiff and assisted plaintiff in completing a medical assessment form when he first transferred to the Jail. Exs. 1-3. She also identified a nursing staff assessment form which she completed on May 15, 2007, on which she wrote that plaintiff was seen pursuant to a grievance call and received a tube of hydrocortisone cream and a wheelchair. Ex. 6.

Nurse Angela Randall also is employed at the Jail and performed the same duties as Nurse Royal. She recalled knowing plaintiff and saw him almost daily to dispense medications. She stated she never received a request from plaintiff for a wheelchair and never saw him hopping on one leg. She was instructed on May 24, 2007, concerning the washing of plaintiff's sheath on a regular basis. See Ex. 6.

### III. Legal Conclusions

Since plaintiff was a pre-trial detainee at the time of his incarceration at the Jail, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his

conditions of confinement. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979), In the Eight Circuit, the standards applied to such Fourteenth Amendment claims are the same as those applied to Eighth Amendment claims.  <u>See</u> <u>Whitnack v. Douglas County</u>, 16 F.3d 954, 957 (8th Cir. 1994).  That is, plaintiff must show that defendants were deliberately indifferent to his serious medical needs.  A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).   This standard involves an objective component, which requires the deprivation to be sufficiently serious, and a subjective component, which requires that the defendant acts with a sufficiently culpable state of mind. <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998).

Initially, with respect to the cuffing of inmates while eating their meals, the Court notes plaintiff does not provide any evidence that defendants disregarded an excessive risk to inmate health or safety.  Although plaintiff testified about difficulty eating and drinking, he provided no further proof that the practice resulted in a deprivation of adequate nutrition, or that he lost weight as a result. Defendant Robinson testified the practice was temporary, while the Jail was completed, and was not a punitive measure, but rather, a security measure. In addition, he testified he witnessed inmates eating well despite the cuffs.  Therefore, the Court finds no evidence of a constitutional violation.

With respect to accommodating plaintiff's handicap, the testimony of the parties and witnesses was unclear about when plaintiff actually requested and received the wheelchair. Although plaintiff claims he did not receive the chair until mid-May, defendant Hurst testified he thought he brought plaintiff the chair about the third week of April. In addition, plaintiff's cellmate, who stated he left the Jail May 2, 2007, testified that he remembered plaintiff with the wheelchair. However, the only documentary evidence concerning the chair is a nursing staff assessment entry on May 15, 2007, recording plaintiff's grievance about needing the chair and defendant Hurst providing such to him. The Court does not know why such an entry would have been made on that date, if plaintiff had already received the chair.   For the purposes of this recommended disposition,  the Court assumes that plaintiff did not receive the wheelchair until mid-May, a month and a half after he arrived at the

Jail.

According to defendant Hurst's testimony, he first became aware of plaintiff's handicap on March 31, 2007, when he interviewed plaintiff upon his arrival at the Jail. It appears to the Court that defendant must have been concerned whether plaintiff was going to need special accommodations, because he testified he asked plaintiff if he thought he could "make it" there. Hurst did this, knowing that the facility was not yet equipped to properly provide for a handicapped inmate. Yet, Hurst testified that he was concerned about plaintiff and accommodated him during his stay by providing him with cream for his nub and arranging for his sheath to be washed several times a week. Hurst also insisted that he obtained the wheelchair for plaintiff the instant plaintiff requested such. The court credits his testimony in this regard.

With respect to defendant Hurst, his placement of plaintiff in the Jail could be construed to be negligence, since he knew that accommodations were not ready for handicapped inmates. However, the Court finds no evidence that he acted with a sufficiently culpable state of mind to constitute deliberate indifference to plaintiff's medical needs. The fact that the Jail was not handicapped-accessible at the time it first opened is evidence to be considered in determining Hurst's culpability, but that fact alone does not necessarily require a finding of deliberate indifference. The Court also notes that although plaintiff claims he complained often about the wheelchair and filed several grievances, there is no documentary evidence of his request, other than the May 15, 2007 assessment entry, and both nurses were credible in their testimony that he never complained to them about needing, and not receiving, a wheelchair. This is significant since they saw him on a daily basis.

Although defendant Adams also was aware of plaintiff's handicap, plaintiff presented no evidence to support a finding of deliberate indifference by him. Adams testified he never saw plaintiff hopping on one leg and never received a complaint from him about a wheelchair. He also testified he arranged for plaintiff's sheath to be washed several times a week. In addition, plaintiff provided no proof that defendant Robinson was even aware of him or any special needs, since his office was not located at the Jail. Generally, the doctrine of respondeat superior is inapplicable in an action filed

6

pursuant to 42 U.S.C. § 1983. Rizzo v. Goode, 423 U.S. 362 (1976). A supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when his corrective inaction constitutes deliberate indifference. See Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). In this particular case, there is no such evidence of knowledge by defendant Robinson of plaintiff's need for an accommodation.

### III. Conclusion

In conclusion, the Court finds that defendants should have judgment against plaintiff on his claims against them. Accordingly,

IT IS, THEREFORE, RECOMMENDED that defendants have judgment against plaintiff and that this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED this __24__ day of April, 2008.

_____
United States Magistrate Judge